## Mitchell *versus* Steinmetz.

97 251
168 539
97 251
219 ¹486
97 251
e221 ³ 70

1. A decree for specific performance will never be made by a court of equity in favor of a vendor unless he is able to offer a title marketable beyond a reasonable doubt, nor against a vendee where he is able to show any circumstances which would make it unconscionable to enforce the contract.

2. In order to make the title to a ground-rent marketable, the title of the land out of which the rent issues must be marketable.

3. A. exposed for sale at public auction, and sold to B. a ground-rent, but without giving notice of the existence of municipal claims against the property out of which the rent issued. B. subsequently discovered that such claims existed to an amount equal to or greater than the difference between the par value of the ground-rent and the value of the premises out of which it issued. In an action by A. against B., to recover damages for loss sustained by the plaintiff on account of the refusal of B. to fulfil his contract of sale, in which action it was agreed that the court should have as full equitable powers as if a bill in equity had been filed for specific performance: *Held*, that the case was one in which a court of equity would not have decreed specific performance, and that the defendant was entitled to judgment.

February 23d 1881. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY, STERRETT and GREEN, JJ.

Error to the Court of Common Pleas, No. 1, of *Philadelphia county:* Of January Term 1881, No. 171.

The following facts were agreed upon by the parties as a case stated for the opinion of the court, with the same effect as if they had been found by a jury in a special verdict, the court to have authority to draw any inferences from the facts which a jury might draw, and to exercise as full equitable powers as if a bill in equity had been filed for specific performance of a contract of sale.

On December 2d 1879, the plaintiff, Mary Amanda Mitchell, wife of Joseph Eastburn Mitchell, being the owner in fee of a ground-rent of $100 per annum, reserved by deed dated July 12th 1874, issuing out of a lot of ground and dwelling-house thereon erected, situate at the northwest corner of Thirty-third and Hamilton streets, in the city of Philadelphia, acting with the approval of her husband, caused the same to be exposed at public sale and sold on that day, by M. Thomas & Sons, auctioneers, to the defendant, Jacob Steinmetz, for the sum of $1600. The terms of sale were cash on the execution of the deed, within fifteen days from sale. Within that time a deed in the usual form, duly executed by the plaintiffs, was tendered to the defendant, who refused to accept the same on the ground that there existed at the time of sale, and at the time of the tender of the deed, certain municipal claims against the lot out of which the rent issued, for unpaid taxes, from 1869 to 1879 inclusive, and for paving, and culvert, &c., amounting in the aggregate to $1684.79, together with interest and costs. Judgments had been entered on some of the claims,

and a levy had been made for the taxes of 1878. All the said claims duly appeared on and before December 2d 1879, as existing and unsatisfied demands against the said real estate upon the locality index established by the Acts of March 31st 1864, and February 16th 1866 (Purd. Dig. 1091, pl. 40, 41), and the unpaid taxes also appeared upon the records of the tax office, but no notice of any of said claims was given at the sale. The property out of which the rent in question issued was assessed for taxation at $3300, which was then about the value of the land, if unencumbered.

The defendant did not discover the existence of the said liens until searches had been taken out by his conveyancer after the sale; and he rested his refusal to accept the deed and pay the purchase-money, upon the ground that the title to the ground-rent sold was not marketable at the time of the sale, and the absence of notice of the existence of said liens at the time of the sale. It was admitted that the title to the ground-rent itself was good and marketable in all other respects, and that the deed tendered was in proper form.

The questions of law to be determined by the court are:—

1. Is the defendant relieved from his contract to purchase the ground-rent executed by him on the 2d of December 1879, by reason of the existence at the date of the purchase of the aforesaid encumbrances upon the real estate, out of which the ground-rent purchased issues? If yes, judgment is to be entered for the defendant.

2. Are the plaintiffs entitled to recover from the defendant the loss sustained by Mrs. Mitchell by reason of the non-fulfilment by the defendant of his agreement to purchase the ground-rent of the 2d of December 1879? If yes, judgment is to be entered in favor of the plaintiff for the sum of fifty dollars ($50).

The court, after argument, entered judgment on the case stated for the defendant. The plaintiff took this writ of error, assigning for error the entry of the judgment.

*A. Sydney Biddle* and *George W. Biddle*, for the plaintiff in error.—The encumbrances on the land may affect its value as a security for the rent, but do not affect the marketability of the title to the rent, which is a distinct estate from the land. The question arising on a bill for specific performance of a contract of sale of real estate is never as to the *value* of the title, but as to its *goodness* and *marketability*. A court of equity will not appraise the pecuniary value of real estate sold, as an element of the right of a party to enforce specific performance, because the right would then depend, not upon the question of title, but upon the margin of value, which is speculative. If the land here had been worth $5000, instead of $3300, the defendant's position would have been

[Mitchell *v.* Steinmetz.]

absurd, yet his legal contention would have been equally forcible. Even in this case, the assessed value of the land ($3300) exceeded the amount of the encumbrances and the purchase-money ($1684.79+$1600=$3284.79). The question of security must, therefore, have entered into the consideration of the price bid. The small margin is the sole ground of objection. There are no encumbrances against the ground-rent. If there had been, the purchaser might have been compensated by deduction from the purchase-money. Suppose there were liens *about* to be filed, and actually filed after the purchase, would that be a defence? Or suppose the land depreciates in value between the date of sale and the delivery of the deed, would that relieve the purchaser? If the vendee can refuse to pay because the property is worth less than he thinks a safe margin, the vendor should have the right to rescind if the security proves more than safe.

The liens were all of record, and the purchaser bought with legal notice, and had full opportunity to investigate the value of his security. The vendor guaranteed the title to the rent, which relieved the purchaser from the duty of taking out searches against *the rent* prior to the sale, but we did not guarantee that the title to the land was unencumbered. We tendered the purchaser a valid deed, conveying what he bought, and he should be compelled to accept the deed and pay the purchase-money. Moreover, if the land is insufficient, the owner of the ground-rent has his remedy against the covenantor.

*J. Sergeant Price*, for the defendant in error.—Specific performance in equity is not of absolute right, but rests in the sound discretion of the court, and will not be enforced against a defendant if he can show any circumstances, either as to matter of law or of fact, which make it inequitable: Dalzell *v.* Crawford, 1 Pars. Eq. Cas. 37; Nicol *v.* Carr, 11 Casey 381; Colwell *v.* Hamilton, 10 Watts 413; Bumberger *v.* Clippinger, 5 W. & S. 311; Speakman *v.* Forepaugh, 8 Wright 363; Doebler's Appeal, 14 P. F. Smith 9; Swayne *v.* Lyon, 17 Id. 436; 1 Sugden on Vendors *337, *368, *401.

Although a ground-rent is a separate and distinct estate from the estate in the land, yet for some purposes the two estates are inseparably connected. The title to the rent necessarily depends upon the title to the land. The conveyancer of a purchaser of the rent cannot stop at its reservation, but must see that the title in the land was good, or the ground-rent may be worthless. The corporeal must exist, or the incorporeal cannot issue out of it. Thus, when land, subject to a ground-rent, is taken for public use under the right of eminent domain, as for a highway, a court of equity will apportion the rent in relief of the tenant, compensating the ground landlord out of the damages awarded for the land taken:

[Mitchell *v.* Steinmetz.]

Voegtly *v.* P. & F. W. Railroad Co., 2 Grant 243; Workman *v.* Mifflin, 6 Casey 362; Cuthbert *v.* Kuhn, 3 Whart. 357; Noble Street, 1 Ash. 276; Reese *v.* Addams, 16 S. & R. 40; Powel *v.* Whitaker, 5 W. N. C. 168. The lien for taxes is, by Acts of Assembly, prior to all other liens or responsibility existing against the land: Act of February 3d 1824, Purd. Dig. 1084, sect. 1. However ingenious may be the argument based on the theory that the ground-rent is a distinct estate, it is fallacious as applied to this case. If the title to the land is worthless by reason of liens which, although within the vendor's knowledge, were not disclosed by him, it would be illusory and against conscience to compel a purchaser of the rent to pay the full market value for it because the title to the rent, as distinguished from that to the land, is theoretically good.

Mr. Justice PAXSON delivered the opinion of the court, March 21st 1881.

This proceeding, although in form an action at law, is in substance a bill for specific performance, and must be so treated. The case stated expressly provides, that the court shall " exercise as full equitable powers as if a bill in equity had been filed for specific performance of the contract of sale."

The case briefly stated is this: The defendant purchased of the plaintiffs, at public auction, a ground-rent of $100 per year (par $1666.66), for the price or sum of $1600. The defendant's conveyancer procured searches against the premises out of which the rent issued, and found the same encumbered by municipal claims and taxes to the extent of $1684.79, and for this reason refused to take title to the ground-rent. The rent itself was not encumbered, but defendant alleges that the liens referred to, together with the ground-rent, equal if they do not exceed the value of the land.

A decree for specific performance is of grace, not of right. It will never be made in favor of a vendor, unless he is able to offer a title marketable beyond a reasonable doubt, nor against a vendee where he is able to show any circumstances which would make it unconscionable to do so. We need not review the decisions upon this subject. It is sufficient to refer to Colwell *v.* Hamilton, 10 Watts 413; Bumberger *v.* Clippinger, 5 W. & S. 311; Dalzell *v.* Crawford, 1 Pars. Eq. Cases 37; Nicol *v.* Carr, 11 Casey 381; Speakman *v.* Forepaugh, 8 Wright 363; Swain *v.* Fidelity Ins. Co., 4 P. F. Smith 455; Doebler's Appeal, 14 Id. 9; Swayne *v.* Lyon, 17 Id. 436.

It was urged, however, that the present contention is not within the cases cited, for the reason that the rule referred to applies only to a marketable title, while the defendant's objection is not to the title to the ground-rent, but to that of the ground out of which the

[Mitchell *v.* Steinmetz.]

rent issues, in other words, that the objection goes not to the validity of the title to the rent, but to its value as a security.

A ground-rent is an estate carved out of the land. The owner of the one has an estate in the rent; the other an estate in the land. Both are real estate, and subject alike to be encumbered by mortgage and judgment. While we have these two separate estates, they are, at the same time, inseparably connected. The rent issues out of the land, and the owner of the latter holds his estate subject to the rent. It needs but this brief statement of the nature of a ground-rent to show that the title thereto is indissolubly connected with the title of the land itself. To make the title to such rent marketable, the title to the land out of which it is reserved must be marketable, otherwise we would have a rent reserved out of nothing.

What are the facts here? The land is heavily encumbered by municipal claims and taxes, which, by Act of February 3d 1824, Pamph. L. 18, are made prior to all other liens and encumbrances. A judicial sale for the arrears of ground-rent, or upon any other encumbrance, will not discharge the lien of the taxes, unless the property brings enough to pay them. See Act of March 11th 1846, Pamph. L. 114. It is manifest, therefore, that this ground-rent is worthless, or its value greatly impaired by reason of the liens upon the land out of which it issues. These liens affect the title to the land, and whatever impairs the title to the land necessarily impairs the title to a rent issuing out of the land.

If the title to the land fails, the title to the rent falls with it. I presume it will be conceded that if this ground-rent had been subject to a prior mortgage on the land equal to the value of the latter, the title to the rent would have been worthless. In what respect does such case differ from the one in hand? In either event, the rent is subject to a paramount lien upon the thing out of which it issues, and which necessarily sweeps away the title to both. This, of course, has no reference to liens upon the land which do not affect the rent.

We are of opinion the court below committed no error in entering judgment for the defendant upon the case stated.

Judgment affirmed.