Volkert et ux., Appellants, *v.* Swan.

Argued December 13, 1961. Before ERVIN, WRIGHT, WOODSIDE, WATKINS, MONTGOMERY, and FLOOD, JJ. (RHODES, P. J., absent).

*William E. Nichols,* with him *Furst, McCormick, Muir, Lynn & Reeder,* for appellants.

*Walter R. Rice, Jr.,* and *Greevy, Knittle, Fisher & Rice,* for appellees, submitted a brief.

OPINION BY FLOOD, J., March 21, 1962:

The plaintiffs sued to recover money deposited or paid on account of the purchase price of real estate. Defendants claimed the right to retain these amounts as liquidated damages under the agreement of sale and judgment was entered for them on the pleadings.

The appellants contend that judgment should have been entered for them because the vendors' obligation to furnish title free and clear of all encumbrances was

violated by a recorded right of way to Pennsylvania Power and Light Company, given by the vendors prior to the execution of the agreement of sale with the appellants.

The agreement of sale provided: "It is also understood that a good and marketable title is to be furnished by the seller, free and clear of any incumbrances except as noted: none." Under the right of way agreement the vendors granted to Pennsylvania Power and Light Company, its successors, assigns and lessees: ". . . the right, privilege and authority to construct, reconstruct, maintain and operate its electric lines, including poles, wires, guys, stub poles, fixtures and apparatus upon, across, over, under and along property which we own or in which we have any interest along the highway commonly known as Pennsyl. U. S. 220, located in the Township of Muncy, County of Lycoming, State of Pennsylvania, and bounded

On the North by Raymond Fry, property.
On the East by Leonard Swartz, property.
On the South by Ellis Artley property.
On the West by Artley Try, property.

and upon, across, over, under and along the roads, streets or highways adjoining the said property, including the right of ingress and egress to and from the said lines at all times for any of the purposes aforesaid; also the right to cut down, trim and remove and keep cut down and trimmed any and all trees, brush or other undergrowth on said premises which, in the judgment of said Company, may at any time interfere with the construction, reconstruction, maintenance or operation of said lines, poles, wires, guys, stub poles, fixtures and apparatus, or menace the same; and also the right to permit the attachments of the wires and cables of any other person or company to said poles." The agreement also provided: "Any poles or other facilities constructed hereunder may, without the payment of fur-

ther consideration, be relocated on said property to conform to new or relocated highway limits."

The court below held that the right of way granted is only a right of way along public roads and, as such, it is not an encumbrance under the agreement, that it worked no injury to the property but was essential to its full and proper enjoyment, and that vendors and purchasers do not consider easements such as this as encumbrances when they sign agreements.

We read the right of way agreement quite differently. Under its language the company is given the right to erect poles and string wires not only along public roads, but also "upon, across, over, under and along" defendants' property and, in addition, "upon, across, over, under and along the roads, streets or highways adjoining the property". This is far wider than a grant of a right of way along public roads only.

The court below presumably construed the phrase "property which we own or in which we have any interest along the highway commonly known as Pennsyl. U. S. 220" to restrict the grant to the strip along the highway. Actually this is the description of the property "upon, across, over, under and along" which the company might string its wires. This obvious reading is fortified by the later additional specific grant "upon, across, over, under and along the roads, streets and highways adjoining the said property". The latter clause would be pure redundancy if the former were construed as the lower court has construed it.

The conclusion that the right of way worked no injury to the property, but was essential to its full and proper enjoyment, becomes a wholly unwarranted assumption when the right given extends to the stringing of wires anywhere across the property "and to cut down, trim and remove, and keep cut down and trimmed any and all trees, brush or other undergrowth on said premises which, in the judgment of the com-

pany, may at any time interfere with the construction, reconstruction, maintenance or operation of said lines, poles, wires, guys, stub poles, fixtures and apparatus, or menace the same. . . ."

While none of the Pennsylvania cases referred to us or disclosed by our research deal with a similar grant, yet nothing in our cases indicates that a grant such as this would not be regarded as a burden so substantial as to relieve the vendee from the obligation of his contract. The vendees were held relieved when the encumbrances consisted of a restriction requiring approval by the New Jersey Board of Navigation before any structures could be built on tidal lands, (*Lewis v. Hamilton's Executors,* 301 Pa. 173, 151 A. 812 (1930)) a restriction against the sale of liquor (*Jeffrey Structures, Inc. v. Grimaldi,* 186 Pa. Superior Ct. 437, 142 A. 2d 378 (1958)), and a house built on property in violation of a zoning law (*Moyer v. DeVincentis Construction Co.,* 107 Pa. Superior Ct. 588, 164 A. 111 (1933)). See also: *Bonebrake v. Koons,* 333 Pa. 443, 5 A. 2d 184 (1939) (existence of right of way for water supply facilities and a direction in a deceased owner's will to create a family burial lot) and *Andrien v. Heffernan,* 299 Pa. 284, 149 A. 184 (1930) (a private lane).

It has been held that a right in a utility to maintain poles or wires over the premises is a burden which a vendee whose agreement protects him against encumbrances cannot be compelled to accept: *Fossume v. Requa,* 218 N. Y. 339, 113 N.E. 330 (1916), and *Garber v. Stern,* 100 N. J. Eq. 470, 135 A. 550 (1927), aff'd 101 N. J. Eq. 742, 138 A. 920 (1927). See *Bozdech v. Montana Ranches Co.,* 67 Mont. 366, 216 P. 319 (1923).

The court below cites *Zimmerman v. American Telephone & Telegraph Co.,* 71 S. C. 528, 51 S.E. 243 (1904), for the proposition that a grant of the right to erect and maintain lines "over and along" certain property, does not confer a right to erect a line or place poles

diagonally across the property. This grant continued: "including necessary poles and fixtures along the roads, streets or highways adjoining the property . . ." While we might agree with the South Carolina court that such rights of way should be strictly construed, yet such construction would not cut down the grant given in the case before us to a mere right to run lines along roads adjoining the property. "Over and along" the property, followed by "including . . . poles and fixtures along the roads, streets or highways adjoining the property" might well be construed to give the right to string wires only over the property along the road, as was held in the *Zimmerman* case. It is another matter to construe so narrowly the right given here to construct lines "upon, across, over, under and along property which we own . . . along the highway commonly known as Pennsyl. U. S. 220 . . . and upon, across, over, under and along the roads, streets and highways adjoining the said property . . ." In the *Zimmerman* case, the court said (71 S.C. at page 530; 51 S.E. at page 244): "The word 'along' means by length of, as distinguished from 'across'". The grant here includes the words "across", "upon" and "under" in addition to the words "over and along", which were used in the grant considered in *Zimmerman* case.

It is also to be noted that the *Zimmerman* case did not involve the question whether the grant was an encumbrance, but only the construction of the language of the grant when the grantee tried to enforce it. On the other hand, in *Fossume v. Requa,* supra, and *Garber r. Stern,* supra, the right of the purchaser to refuse to take the property because of the encumbrance was directly involved.

Finally, even if the Pennsylvania Power and Light Company's right to erect lines across the property in question were in doubt, the grant is sufficiently broad to produce litigation should that company's right ever

be questioned. Consequently, the question before us is not whether the company has such right, but whether or not it might reasonably claim such right. As stated in *Bonebrake v. Koons,* supra (333 Pa. at pages 447-448, 5 A. 2d, at page 186) : ". . . The vendee under an agreement for the sale of real estate cannot be saddled by the vendor with a title of doubtful marketability or one inviting the hazard of litigation at the hands of adverse claimants, and where the title offered by the vendor is of such a character recovery of the purchase money will be denied : Black v. American International Corp., 264 Pa. 260, 107 A. 737; Reighard's Estate, 192 Pa. 108, 43 A. 413."

In holding that a line of telephone poles, wires, or fixtures placed in a highway in front of abutting property under grant from the owner thereof is a violation of a covenant for a conveyance free from encumbrances, the court in *Fossume v. Requa,* supra (218 N. Y. at pages 343-344, 113 N.E. at page 332), said: "The maxim *de minimis non curat lex* does not apply in such a case. That maxim can only apply to imperfections in title so slight that the court can say of them the parties to the action did not have such defects in contemplation and if they had they would have disregarded them. It may be that the plaintiffs intended to lay out the farm in a high-class residence district . . . The title search brought to the plaintiffs' knowledge the recorded grant . . . of a perpetual easement to construct and maintain over the farm a line of telegraph and telephone poles and wires. That may have been a very objectionable incumbrance in the eyes of the plaintiffs, and I think it would be a very startling proposition for the court to say that it was a defect in title which may be disregarded in this action at law."

A motion for judgment on the pleadings, like a demurrer, opens the record and judgment should be entered for any party to whom it appears it should go

under the pleadings. *Knecht v. Medical Service Association of Pennsylvania,* 186 Pa. Superior Ct. 456, 143 A. 2d 820 (1958). When, as here, it clearly appears from the pleadings that judgment should be entered against the party filing the motion, such judgment may be entered by this court. Act of June 24, 1895, P. L. 212, §8, par. 8, 17 PS §192.

The judgment is reversed. Judgment is hereby entered in favor of the plaintiffs, L. John Volkert and Janet R. Volkert, his wife, and against the defendants, J. Fred Swan and Adelaide Swan, his wife, and Luther E. Fish, in the sum of $3200 with interest from August 3, 1959.